(100 App. Div. 385)

## JACKSON v. JACKSON.

(Supreme Court, Appellate Division, First Department. January 20, 1905.)

1. PARTNERSHIP—ACCOUNTING—SPECULATIVE TRANSACTIONS—EVIDENCE.

Where, in a suit by the executor of a deceased partner against the surviving partner and the executor of another deceased partner for an accounting as to certain real estate speculations alleged to have been carried on by defendants with the firm's money, it was not contended that there was any error in balancing the firm's accounts annually, or in the balance as entered in the annual statements and in the firm's books disclosing such transactions, which were received in evidence, error, if any, in the exclusion of certain tickets, slips, and sheets on which original entries of the transactions were made was not prejudicial.

2. SAME—EQUITY SUIT—EVIDENCE—HARMLESS ERROR.

Where, in a suit in equity for a partnership accounting, plaintiff was entitled to introduce certain letters to show that he had endeavored to adjust the matter without litigation, as bearing on the question of costs, the erroneous admission of some of the letters written by plaintiff, and not replied to, without limiting their bearing, was not reversible error.

Van Brunt, P. J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Mary F. Jackson, as executrix of Ebenezer C. Jackson, deceased, against William H. Jackson individually and as executor of the estate of John H. Hankinson, deceased, and another. From an interlocutory judgment in favor of plaintiff, defendant William H. Jackson individually and as executor appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Charles W. Pierson, for appellant.

Henry White, for respondent.

LAUGHLIN, J. The plaintiff's testator, Ebenezer C. Jackson, and the defendant William H. Jackson, who were brothers, and the decedent, John H. Hankinson, were copartners in the business of manufacturing and selling grates, fenders, and other hardware in the city of New York. The copartnership was terminated by the death of Hankinson in 1890. The plaintiff's testator brought this action, alleging that without his knowledge or consent the appellant and the deceased, Hankinson, engaged in private land speculations, using therefor the copartnership funds and credit in large amounts, and he demanded an accounting for the use of these funds and credit and a general copartnership accounting. He died subsequent to the decision, and the action was revived in the name of his executrix. Considerable of the copartnership assets remained unadministered. The learned referee therefore disregarded the demand for a general accounting, and treated the action as one for an accounting of the copartnership funds and credit used in these land speculations. This course is neither questioned nor objected to by either party. The theory of the plaintiff's testator evidently was that he was entitled to an accounting, and, in the event that profits were made in the real estate transactions, that he would be entitled to share therein, but that otherwise the appellant and estate of the

deceased, Hankinson, would be chargeable with the moneys thus diverted, and interest thereon. The theory of the appellant was that he was only chargeable for the moneys withdrawn from the firm, together with interest thereon. The correctness of these respective contentions depended upon whether or not the plaintiff's testator knew and acquiesced in the use of the copartnership credit and funds by the appellant and Hankinson for their individual benefit. The evidence adduced upon this point by the respective parties presented a question of fact, and the determination of the referee is fairly sustained. The learned referee, in a well-prepared opinion, considers the contention of the respective parties, and reviews the material evidence; and, were it not that certain exceptions, not discussed in the opinion, to the exclusion of evidence, are urged upon the appeal as grounds of reversal, the judgment might well be affirmed upon the opinion of the referee.

The so-called private real estate speculations in which copartnership funds were used commenced in 1884. The first of these copartnership funds were charged upon the firm books under a property account entitled "Imperial, 57 E. 76th Street, property of William H. Jackson and J. H. Hankinson," and "Douglas Street, Brooklyn, property of W. H. J. and J. H. H." Thereafter, until 1890, the amounts thus withdrawn were charged in the property accounts under the names of the respective properties without a designation as to the ownership. The receipts from the respective properties were credited on these respective accounts. The firm had been in existence since 1880, and it continued the practice of its predecessor in making the first entry of cash receipts and disbursements upon tickets or slips, from which they were subsequently entered, daily as a rule, in the cashbook. The firm from time to time in the course of its hardware business found it advisable, advantageous, or necessary to acquire and dispose of real estate and securities, the receipts and disbursements concerning which were kept in property accounts designating the particular piece or tract or securities. During the year 1890 and thereafter the receipts and disbursements concerning the so-called private real estate transactions of the appellant and Hankinson were entered as usual upon tickets or slips, which were kept in the cash drawer; but no entries were made in the firm books proper concerning the same until the end of the year, at which time the receipts and disbursements shown by these tickets or slips were tabulated upon a sheet, and a balance struck, which was carried into the annual statement of the firm accounts, and thus entered upon the books. In the annual statement of assets and liabilities for the year 1889 and prior thereto the balance unpaid of moneys thus withdrawn and invested was embraced in an item designated as "accounts receivable," which also included the firm real property and merchandise accounts as well. The next year it appeared in a property item including the firm property as well. Subsequently it appeared as a separate property item designated as "W. H. J. and J. H. H.," and the firm property appeared as a property item with the designation "W. H. J. & Co." These tickets or slips have been preserved, and the appellant of-

fered them and the sheets in evidence, upon the theory that they formed part of the firm books. The plaintiff interposed objections, and they were excluded. It is claimed that this constituted reversible error. It is not here contended that there was any error in balancing these accounts annually, or in the balance as entered in the annual statements and in the books. The relevancy and materiality of appellant's contention that these tickets or slips and sheets constituted part of the firm accounts is that the plaintiff's testator had actual knowledge thereof by reason of his having access thereto, and that, even if he did not have actual knowledge, he is chargeable with constructive knowledge. Assuming that they constituted part of the firm accounts, we fail to see how the appellant was prejudiced by their exclusion. All of the material facts concerning them were shown, and balances of these accounts, testified to be correct, were received in evidence in the reception of the copartnership books. They will be admissible upon the accounting, and may then become material evidence.

Prior to the commencement of the action plaintiff's testator and his attorneys wrote several letters to the appellant, and his attorneys wrote other letters to the attorneys for the appellant, asking for information concerning the assets and liabilities of the firm, referring to a claim alleged to have been made by the appellant that the firm was insolvent, and criticising him therefor, and containing suggestions and propositions with reference to an adjustment and settlement. There was no reply to most of these letters. They were offered in evidence by the plaintiff, and received under appellant's objection and exception that they were irrelevant, immaterial, and declarations in plaintiff's own favor. Some of these letters to which no reply was made may be subject to the objection that they contain declarations in favor of the plaintiff, but it is to be borne in mind that this is an equity suit, in which a reversal should not be had for an error in the admission of evidence, unless it was manifestly prejudicial. The plaintiff had a right to show that he endeavored to adjust the matter before bringing the action, and this would have a material bearing upon the question of costs. We are of opinion that, although the reception of some of the letters, without limiting their bearing, may have been erroneous, it does not constitute substantial error or require a reversal.

It follows that the judgment should be affirmed, with costs.

PATTERSON, O'BRIEN, and HATCH, JJ., concur.

VAN BRUNT, P. J. I dissent. There were so many instances of the admission of concededly incompetent evidence that it must have influenced the referee. The judgment should therefore be reversed.